UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In RE SUBPOENA BY A RECEIVER IN                    Civil Action No.:
COMMODITY FUTURES TRADING COMMISSION
Plaintiff,


v.


OASIS INTERNATIONAL GROUP, LIMIT ET AL.
-----------------------------------------------------------------X

**MOTION TO MODIFY SUBPOENA**

I am the appellate attorney for Mr. Michael DaCorta, and I am representing

him on the appeal to the 11th Circuit Court of Appeals in the case of *Commodity*

*Futures Trading Commission v. Oasis International Group, et al*. (Civil Action No.:

19-CV-886). My client is Mr. Michael DaCorta, one of the named defendants in that

litigation. Mr. DaCorta's case is presently pending before the 11th Circuit Court of

Appeals in Atlanta, Georgia.

I make this motion to modify the subpoena served on me at my office at 48

Wall Street, 11th Floor New York, New York 10005 by Mr. Burton Wiand (the

Receiver).  The subpoena must be modified to exclude mails exchanged between me

and another law firm that also represents Mr. Michael DaCorta as they fall within

the attorney-client privilege. The emails are all between me and a paralegal for the

other law firm and they all contain one or more of the following: legal research

concerning the appellate brief to the 11th Circuit for Michael DaCorta; legal analysis for the appeal to the 11th Circuit; legal strategy for the appeal to the 11th Circuit; discussion of legal argument for the appeal to the 11th Circuit; case law, statutory law, regulatory law for the appeal to the 11th Circuit. All emails referred to here were exchanged in 2024. I was retained in early 2024, and I was preparing the appellate brief for the appeal. An experienced paralegal, employed by another law firm that also represents Mr. DaCorta, was assisting me at the request of Mr. DaCorta with legal research and discussion of the legal arguments that would be raised on appeal.

There are about forty emails that I am asking this Court to exclude from the reach of the subpoena served on me by Mr. Burton Wiand in my office. Because the subpoena expressly excludes privileged materials and Mr. Wiand asserts that he is entitled to these emails, this Court should modify the subpoena to exclude these emails as they all come within the embrace of attorney client privilege, attorney work product and the common interest doctrine.

## *Background*

In 2019, the Commodity Futures Trading Commission (the "CFTC") brought a civil action against the Oasis International Group (OIG) in the United States District Court for the Middle District of Florida. [Commodity Futures Trading Commission v. Oasis International Group, Limited, et al, and Michael DaCorta Docket 19-cv-00886 in the U.S. District Court for the Middle District of Florida]

The lawsuit named a number of defendants, including my client, Mr. Michael DaCorta. OIG was a company founded by Mr. Michael DaCorta designed to produce revenue streams from a variety of investments, including real estate, precious metals, business purchases, and foreign exchange trading. Mr. DaCorta operated OIG between 2014 and 2019. The funds that are alleged to have been illegally obtained by Mr. DaCorta were obtained during the years of his operation, i.e. from the relevant time period under the complaint in this litigation, which is 2014 to 2019.

Occurring simultaneously with the civil case against Mr. DaCorta, were criminal charges of mail and wire fraud. Mr. DaCorta was convicted after a jury trial and sentenced to twenty-three years in prison.

The district court appointed Mr. Burton Wiand as receiver in the civil case with the objective of retrieving investor funds alleged to have been taken by Mr. DaCorta in that time frame, i.e. "the Relevant Time Period" (2014-2019) as stated within the complaint filed by the CFTC and the order appointing Mr. Wiand as receiver. The Court subsequently issued an order on July 11, 2019 that outlines the scope of authority of the receiver. (Exhibit A Order dated July 11, 2019).

Motions for summary judgment were made by both the CFTC and Mr. DaCorta. The district court granted the CFTC's motion for summary judgment and denied Mr. DaCorta's motion in December 2023. Mr. DaCorta filed a timely notice of appeal in the civil proceeding and hired Stephen Preziosi (the undersigned

attorney to this motion to modify the subpoena) in February 2024 to appeal the district court's decision granting the CFTC's motion for summary judgment. That appeal was perfected in the Eleventh Circuit on behalf of Mr. DaCorta in June, 2024. [Commodity Futures trading Commission v. Oasis International Group, et al., and Michael DaCorta, 11th Circuit Docket No.: 24-10132].

Mr. Burton Wiand, the receiver (the "Receiver") appointed by the U.S. District Court for the Middle District of Florida in Tampa, Florida had his process server contact my office and I agreed to meet the process server at my office to accept service of the subpoena.

*The Receiver's Subpoena*

The Receiver's subpoena makes a number of requests for documents. Those requests are as follows:

> *1. All documents reflecting the source of any funds or other consideration received in connection with your legal representation of Michael DaCorta in any matters, including, but not limited to, the Receivership Matter.*
> *2. Any correspondence or communication relating to Request 1 or your representation of Michael DaCorta (excepting privileged communications between Michael DaCorta and counsel for the purpose of obtaining legal advice).*
> *3. All documents relating to your receipt of funds or other consideration from any person or entity other than Michael DaCorta in connection with your legal representation of Michael DaCorta in any matters, including, but not limited to, the Receivership Matter.*
> *4. Any correspondence, communication, or agreements relating to your retention as counsel for Michael DaCorta (excepting privileged communications between Michael DaCorta and counsel for the purpose of obtaining legal advice).*

*5. Any and all communications with Brent Winters, Greg Melick, Jason McKee, Intermountain Precious Metals, any person affiliated with the Oasis Replevin Group (a/k/a "Oasis Helpers"), and/or Michelle Utter.*
(Exhibit B – Subpoena)

In paragraphs one through four the receiver asked for documents regarding my legal representation of Mr. DaCorta, such as retainer agreement, payment, correspondence regarding payment. I have complied with paragraphs one through four of the subpoena and forwarded all such documents to the receiver.

Paragraph five of the "Specific Requests" page of the subpoena (Exhibit B pg. 5) asks for "any and all" communications with a series of persons. I communicated to the receiver by phone and by letter and told him that most of those people I don't know; however, I have had communications by email with Mr. Greg Melick. Greg Melick is a paralegal at another law firm that also represents Mr. Michael DaCorta.

First, it must be noted that the undersigned attorney has complied with the subpoena regarding all requests regarding the funds and their origin and amounts and all communications to that effect. Mr. Wiand expressed concern with how much I was paid by Mr. DaCorta and who paid me to file his appeal. I furnished him with all that information, including my written retainer agreement and the copies of all payments that I received. This fulfilled the requests of paragraphs one through four in his subpoena.

Paragraph five of Mr. Wiand's subpoena requests any and all communications with Brant Winters, Greg Melick, Jason McKee, Intermountain Precious metals, Oasis Replevin Group, and Michelle Utter.

I called Mr. Wiand personally and told him that I had one phone conversation with Brent Winters and there were no related documents to that conversation; I had one phone conversation with Jason McKee and there are no related documents to that conversation; I don't know what Intermountain Precious Metals is and have had no communication in any form with that entity; I have not had any communications with the Oasis Replevin Group; I don't know who Michelle Utter is.

I have had numerous communications with paralegal Greg Melick. At the direction of my client, Mr. Michael DaCorta, Mr. Melick assisted me with research and preparation of the appellate brief for Mr. DaCorta to the 11th Circuit Court of Appeals. We exchanged a number of emails regarding legal research, legal argument for the appellate brief, legal analysis of facts, case law for the brief, statutory and regulatory law concerning the legal argument to be presented in the appellate brief to the 11th Circuit.

The documents Mr. Wiand seeks, which are the emails exchanged between me and Mr. Melick, the paralegal, contain legal research for the appeal, legal strategies, legal arguments, and discussions, all dealing with Mr. DaCorta's appeal. I told Mr. Wiand that these materials fall under the attorney-client privilege and that

he was not entitled to them because they are privileged and privileged materials are expressly excluded by the subpoena. I followed that with a letter and email communications regarding same. A list of the emails in question is contained herein with a summary of their contents. I will happily supply these emails to the Court and I ask for an in camera inspection as they are communications between two law firms that both represent Mr. DaCorta.

Mr. Wiand, the receiver, by way of subpoena now seeks documents protected by the attorney-client privilege and attorney work product from non-parties outside the litigation in the Middle District of Florida. The documents he seeks have nothing to do with the receivership estate, and Mr. Wiand now acts outside the scope of his authority in his request for these documents. He speculates that the People who invested money in Mr. DaCorta's company are now providing funds to appeal the case on behalf of Mr. DaCorta. The documents he seeks are protected by attorney-client privilege and are attorney work product.

Most importantly, this Court should modify the subpoena to keep these emails out of the hands of Mr. Wiand because the emails discuss my legal strategy and discussion of the legal arguments I raise on appeal on behalf of Mr. DaCorta. Mr. Wiand regularly communicates by phone and by email with the attorneys for the CFTC who are opposing counsel in the appeal to the 11th Circuit. Any

communications with Mr. Wiand would be tantamount to communicating directly with opposing counsel.

*The Motion to Modify the Subpoena is Correctly Brought in the Southern District of New York*

The motion to quash or modify the subpoena in this case is properly made in the Southern District of New York. While the underlying case is in the Middle District of Florida, the documents sought by the subpoena are in the office of the undersigned attorney at 48 Wall Street New York, New York 10005, and the subpoena was served on me in my office at 48 Wall Street, 11th Floor New York, New York 10005. Therefore, Manhattan is the place of compliance and it is appropriate to bring the motion to quash or modify a subpoena in the district where compliance is requested. *In re Smerline Litigation*, No. 21 Civ. 2552 (JPC), 2022 WL 684148 at *1 (S.D.N.Y. Mar. 8, 2022)

Under FRCP Rule 45(d)(3)(A), one may move to modify a subpoena in the court for the district where compliance is required. The district court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies.

When the commanded party objects to a subpoena, "the court for the district where compliance is required must quash or modify a subpoena that" does not meet certain requirements. Fed. R. Civ. P. 45(d)(3). Rule 45(d)(3), in other words, "reserves the power to quash or modify a subpoena to the 'court for the district where

compliance is required.' " *KGK Jewelry LLC*, 2014 WL 1199326, at *2 (quoting Fed. R. Civ. P. 45(d)(3)); *see also* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("Under Rules 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c).") So outside of Rule 45(f)—which allows the court where compliance is required to transfer subpoena-related motions to the issuing court in certain circumstances—the issuing court lacks "jurisdiction over ... motion[s] to quash" if it is not also the court where compliance is required. *KGK Jewelry LLC*, 2014 WL 1199326, at *2. *In re Smerling Litig.*, 21 CIV. 2552 (JPC), 2022 WL 684148, at *2 (SDNY Mar. 8, 2022).

In this case, the issuing court is the U.S. District Court for the Middle District of Florida. The subpoena was served at the office of Stephen Preziosi (the undersigned attorney) in Manhattan at 48 Wall Street New York, New York and the receiver is requesting the production of documents from my office.

To be clear, I have already produced all documents listed in paragraphs 1 through 4 of the receiver's subpoena (Exhibit B pg. 5), and I am objecting to and asking this Court to modify the subpoena with regard to certain communications, specifically emails, regarding legal strategy and legal arguments contained within those communications, which were exchanged between a paralegal for another law firm that also represents Mr. DaCorta and my office.

*Stephen Preziosi's Compliance With The Subpoena*

I arranged to meet with Mr. Wiand's process server and invited him to my office so that he could give me the subpoena. The process server claimed he was having trouble getting into my building in Manhattan, and I made sure he had access to my building and my office to serve the subpoena. I personally met with the process server and accepted the subpoena.

I reached out to Mr. Wiand by phone on July 11, 2024  and had a conversation with him about the subpoena. We went through each item requested in the list of "Special Requests" at page 5 of the subpoena. I supplied the receiver with all documents relating to my representation of Mr. DaCorta, including the retainer agreement signed by Mr. DaCorta, proof of the funds paid to me, a check made out to my office and a document showing an electronic transfer.

*My Phone Conversation With Mr. Wiand Regarding Subpoena Compliance*.

While I was on the phone with Mr. Wiand, I also went through paragraph 5 of the Special Requests on page 5. I informed Mr. Wiand that he is not entitled to the emails in question as they are privileged. I told Mr. Wiand that I would make a motion to modify his subpoena.

Before I could file my motion to modify the subpoena, Mr. Wiand filed a motion to hold me in contempt. I had applied for special admission to the Middle District of Florida in order to make the motion to modify the subpoena. However, as

I am not accustomed to civil litigation in the trial courts as my practice is exclusively appeals, I did not realize that the motion to modify should have been made in the Southern District of New York where my office is, i.e. the place of compliance.

Mr. Wiand's motion for contempt was dismissed by the Middle District of Florida as the District Court in the Middle District held that the motion was brought in the wrong place; it must be brought in the place of compliance, i.e. in the Southern District of New York.

_The Motion To Modify The Subpoena Is Timely: Litigation Should Not Be Pending In Two Different Courtrooms_

The U.S. District Court for the Middle District of Florida denied Wiand's motion on December 3, 2024 (Exhibit C order dismissing Wiand's motion). In my responding papers to the motion for contempt, I argued that the motion should be denied because Mr. Wiand was not entitled to the documents that he seeks in his subpoena as they are protected by attorney-client privilege. While that litigation was pending, I did not see the sense of filing a motion to modify or quash in the Southern District of New York because that may have created contradictory opinions from two different courts, i.e. the Southern District of New York and the Middle District of Florida, on the same issue.

I am now submitting this motion to modify the subpoena on the grounds that the subpoena seeks information that is protected by the attorney-client privilege.

*Wiand's Subpoena Seeks Communications That Fall Within The Attorney-Client Privilege And Are Attorney Work Product*.

Mr. Wiand's subpoena expressly excludes any privileged materials. Under the specific request for information and documents section of Mr. Wiand's subpoena paragraph 4 it states: *Any correspondence, communication, DaCorta (excepting privileged communications between Michael DaCorta and counsel for the purpose of obtaining legal advice).* (Exhibit B pg. 5 para. 4).

Most importantly, the communications concerning the legal research, legal arguments, and legal strategy must be privileged because Mr. Wiand admittedly communicates by phone and email on a regular basis with opposing counsel, i.e. the attorneys for the CFTC.  As appointed receiver, Mr. Wiand, according to his billable hours, which are regularly submitted to the U.S. District Court in the Middle District of Florida, has frequent communications with the attorneys that are opposing my appeal in the 11th Circuit. Those communications are directly related to the case I am arguing before the 11th Circuit. Any disclosure to Wiand would be the same as disclosing information directly to opposing counsel. Revealing legal arguments and legal strategy to Mr. Wiand would be decidedly unfair to my client.

*The Attorney Client Privilege: Agents of the Attorney, Emails and Attorney Work Product.*

Because the subpoena compels compliance in New York, and the communications took place via email from New York the attorney client privilege as defined by New York law is applicable. The privilege is defined by C.P.L.R. §4503; privileged communications are extended to emails by C.P.L.R. §4548; attorney work product is absolutely immune from discovery and not obtainable through the discovery process under C.P.L.R. § 3101(c).

The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship (*see* CPLR 4503[a][1] ). The oldest among the common-law evidentiary privileges, the attorney-client privilege "fosters the open dialogue between lawyer and client that is deemed essential to effective representation" (*Spectrum Sys. Intl. Corp. v. Chemical Bank,* 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 [1991] ). "It exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment" (*Matter of Priest v. Hennessy,* 51 N.Y.2d 62, 67–68, 431 N.Y.S.2d 511, 409 N.E.2d 983 [1980] ).

The attorney client privilege extends to agents of the attorney and those that work with the attorney. The privilege extends to all persons who act as the attorney's agents (*US v. Kovel,* 296 F.2d 918, 921 [2d Cir1961] ). "[P]rivilege covers

communications to non-lawyer employees with a menial or ministerial responsibility that involves relating communications to an attorney" ' (*Kovel,* 296 F.2d at 921). Accordingly, the production of the e-mails before the stenographer transcribing Forward's e-mail did not constitute a waiver of the privilege associated with these e-mails, regardless of whether or not a confidentiality agreement with the stenographer was executed. *Matter of Forward v Foschi*, 27 Misc 3d 1224(A) [Sup Ct 2010].

Civil Practice Law and Rules § 4548 extends the privilege to email and electronic communications. It states: No communication privileged under this article shall lose its privileged character for the sole reason that it is communicated by electronic means or because persons necessary for the delivery or facilitation of such electronic communication may have access to the content of the communication. CPLR § 4548. New York courts have consistently recognized that this privilege extends to all email communications. *Gottwald v. Geragos*, 205 A.D.3d 417 (1st Dept. 2022).

The work product of an attorney includes material produced and obtained by an attorney in their professional capacity and with the use of their professional skills involving legal reasoning, legal research, analysis, conclusions, legal theory, and strategy. *Venture v. Preferred Mut. Ins. Co.*, 153 A.D.3d 1155 (1st Dept. 2017). Civil Practice Law and Rules §3101(c) codifies the work product privilege and it states:

*Attorney's work product. The work product of an attorney shall not be obtainable.* This privilege is unqualified *Kenford co., Inc. v. Erie County*, 55 A.D.2d 466 (4th Dept. 1977) such that an attorney's work product is absolutely immune from discovery *Bluebird Partners, L.P. v. First Fidelity Bank, N.A., New Jersey*, 248 A.D.2d 219 (1st Dept. 1998) regardless of its relevance.

Work product encompasses interviews, statements, memoranda, correspondence, briefs, reports regarding pending litigation or litigation about to commence, and information and observations disclosed by the attorney. The materials must be uniquely the product of a lawyer's learning and professional skills, such as materials which reflect his legal research, analysis, conclusions, legal theory or strategy. *Hoffman v. Ro-San Manor*, 73 A.D.2d 207, 211 (1st Dept. 1980)

The documents in question here are communications between the paralegal of one law firm that represents Mr. DaCorta and the lawyer of a separate law firm, which also represents Mr. DaCorta. There are about forty emails in question, which were exchanged between paralegal and attorney. Each of the emails (listed below) contained at least one or some combination of the following: legal research, case law, statutes, regulations, discussion of legal strategy, discussion of legal argument, drafts of an appellate brief, discussion of drafts of an appellate brief, discussion of legal arguments to be raised on appeal to the 11th Circuit.

All of these documents fall within the attorney work product privilege in that they were prepared in preparation for litigation before the 11th Circuit Court of Appeals and they are uniquely the product of legal research, legal analysis, and they are discussion of the legal arguments that would be raised in Mr. DaCorta's appellate brief.

The documents are therefore privileged under the work product privilege and should not be furnished to the receiver, Mr. Wiand not only because they are privileged but more importantly because of Mr. Wiand's intimate relationship with our opposing counsel (the CFTC) in the litigation before the 11th Circuit Court of Appeals. Mr. Wiand, according to his billable statements presented to the district court in the Middle District of Florida demonstrate that he regularly communicates with the CFTC by phone and by email. Any communications divulged to Mr. Wiand would certainly be conveyed to opposing counsel in the litigation before the 11th Circuit.

*The Attorney Client Privilege: The Common Interest Doctrine*

The common-interest doctrine affords an exception to the general rule that the presence of a third party at a communication between attorney and client defeats the confidentiality of the communication for purposes of the attorney-client privilege. *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 625 (2016). Under the common-interest doctrine, a third party may be present at the

communication between an attorney and a client without destroying the attorney-client privilege if the communication is for the purpose of furthering a nearly identical legal interest shared by the client and the third party. Where clients have communications with separate counsel to advise them on matters of common legal interest, the common interest exception allows them to shield from disclosure certain attorney client communications that are revealed to one another for the purpose of furthering a common legal interest. *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 625 (2016). In order for the common interest doctrine to apply, the communications must be made in furtherance of the common legal interest, and the communication must relate to litigation, either pending or anticipated. *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 626-627 (2016).

While the common interest doctrine normally applies where there are two separate defendants with two separate lawyers, the wisdom and the protections of the doctrine are applicable here as well despite the fact that there is one client (Michael DaCorta) represented by two law firms. The communications between the two law firms fits all the criteria and protects the same interests that the common interest doctrine was developed to protect. The communications are emails comprising legal research, legal argument and legal strategy for a pending appeal in the 11th Circuit Court of Appeals. The emails were exchanged, at the request of the

client, between a paralegal for one law firm and a lawyer for the other law firm. Both firms were retained by the same client, Mr. DaCorta, and both firms have an interest in the best possible legal arguments and strategies to be put forth on his behalf. The two law firms were pursuing a common legal interest on behalf of the same client and the litigation was (and still is) pending.

Most importantly, the subject of Mr. DaCorta's legal arguments and legal strategy should and must be shielded from the receiver, Mr. Wiand, because Mr. Wiand has very frequent and regular communications with Mr. DaCorta's legal adversary (the CFTC) in the appeal to the 11th Circuit. Requiring the emails exchanged between law firms to be handed over to the receiver would be most unfair to Mr. DaCorta and violative of his privileged rights.

*The Email Communications In Question Between An Attorney And A Paralegal For Another Law Firm.*

The communications (emails) in question are between myself and Mr. Greg Melick, a paralegal at the Law Office of Brent Winters. My client, Mr. DaCorta, is also a client of the Law Office of Brent Winters. The documents in question are all email discussions of legal strategy, legal research, and my drafts of the appellate brief in preparation for Mr. DaCorta's appeal. Mr. DaCorta authorized me to communicate with Mr. Melick regarding the appeal, legal issues to be raised, and legal strategy. Thus, the emails in question all deal with Mr. DaCorta's appeal and

the legal issues raised in that appeal. Thus, they all fall under the attorney-client privilege and are attorney work product.

*The Emails*

I have listed all the emails in question, their dates, and provided a brief summary of their contents. Each of them are protected by attorney client privilege and contain attorney work product. They all relate to the preparation of the appeal for Mr. DaCorta in the civil case and some discussion of the appeal in the criminal case. In all cases the materials, discussions, notes, thoughts, analyses, exchanges of documents, and conclusions contained within them, however brief, are protected by attorney-client privilege as they are communications between two law firms, both of which represent Mr. Michael DaCorta. I will happily supply the documents to this Court for an in Camera inspection. The emails with a summary of their contents are as follows:

| Date of Email | From | To | Subject Matter |
|---|---|---|---|
| March 13, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplied documents assisting in preparation for appeal |
| March 13, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplied documents requested by Preziosi in preparation for appeal to the 11th Circuit. |

| March 13, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplied documents on motions for summary judgment and his opinion about the motion made on behalf of DaCorta in preparation for appeal to the 11th Circuit. |
| March 13, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplied requested documents regarding motions made in the district court in preparation for appeal to the 11th Circuit.. |
| March 13, 2024d | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick provided documents on motions made in the district court in preparation for appeal to the 11th Circuit. |
| April 12, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion and analysis of the causes of action from the CFTC complaint in the district court. Used to prepare the appeal to the 11th Circuit Court of Appeals. |
| April 12, 2024 | Greg Melick (paralegal to Law | Stephen Preziosi | Discussion and analysis of transcripts and |

| | Office of Brent Winters) | | legal arguments used in preparation for appeal to the 11th Circuit. |
|---|---|---|---|
| April 13, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion and analysis of trial transcripts as they apply to the appeal to the 11th Circuit. |
| April 15, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Quoting trial attorney for Mr. DaCorta and discussion of trial transcripts as they relate to the appeal to the 11th Circuit. |
| April 17, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of witness testimony as it relates to the appeal to the 11th Circuit; trial exhibits attached |
| April 17, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of witness testimony as it relates to the appeal; discussion includes attorney opinion and commentary on witness testimony. |
| April 17, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of the presentence report and sentencing and witness testimony |
| April 17, 2024 | Stephen Preziosi | Greg Melick (paralegal to Law | Discussion of another attorney |

| | | Office of Brent Winters) | for Mr. DaCorta regarding DaCorta Criminal Appeal |
|---|---|---|---|
| April 17, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Acknowledging receipt of previous email |
| April 18, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion and opinion of witness testimony and attorney |
| April 18, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Contains link to statements made by DaCorta and analysis of the criminal case against DaCorta |
| April 18, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Summary of research techniques |
| April 18, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplied documents at Preziosi's request regarding the loan agreement by DaCorta. |
| April 23, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion and analysis of the loan agreement in preparation of the appeal to the 11th Circuit. Includes discussion of witness testimony as relates to the Appeal to the 11th Circuit. |

| April 25, 2024 | Stephen Preziosi | Greg Melick (paralegal to Law Office of Brent Winters) | Discussion of trial transcript as it relates to issue for appeal regarding commodity pool. |
| April 25, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion with notes and case law on motions for summary judgment being appealed to the 11th Circuit. |
| April 25, 2024 | Stephen Preziosi | Greg Melick (paralegal to Law Office of Brent Winters) | Discussion of witness testimony and trial court ruling regarding issue on appeal to the 11th Circuit Court of Appeals. |
| April 25, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion and notes from another attorney for Mr. DaCorta regarding motions made in the district court as they relate to the appeal to the 11th Circuit. |
| April 25, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Notes on motions for summary judgment and notes regarding depositions of witnesses; attached documents regarding notes and strategies for motions and depositions used |

| | | | by DaCorta Attorneys. |
|---|---|---|---|
| April 26, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of litigation in lower court and strategy concerning appellate court's decision. |
| April 26, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of trial transcript and issues concerning the commodity pool central to the Appeal to the 11th Circuit. |
| April 26, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Providing documents from lower court docket |
| April 26, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Providing documents from lower court docket and discussion of those documents and their contents |
| April 26, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of closing arguments and trial exhibits as they relate to issues being raised on appeal. |
| May 1, 2024 | Stephen Preziosi | Greg Melick (paralegal to Law Office of Brent Winters) | Draft of issue being raised on appeal and discussion and analysis of that issue. |
| May 1, 2024 | Greg Melick (paralegal to Law | Stephen Preziosi | Discussion and Analysis of one of |

| | | | |
|---|---|---|---|
| | Office of Brent Winters) | | the elements of the criminal trial as it relates to the civil appeal to the 11th Circuit. |
| May 1, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of an evidentiary hearing and strategy of DaCorta's attorney and witness testimony |
| May 2, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Comments on issue raised on appeal and draft of appellate brief. |
| May 2, 2024 | Stephen Preziosi | Greg Melick (paralegal to Law Office of Brent Winters) | Acknowledging notes on the partial draft of appellate brief. |
| May 3, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Discussion of appellate brief and strategy concerning a 2255 petition. |
| May 3, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplying requested documents regarding appeal for DaCorta. |
| May 3, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplying documents regarding DaCorta Appeal. |
| June 14, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Melick supplying documents from lower court docket and discussion of legal |

| | | | representation of Jason McKee by Brent Winters. |
|---|---|---|---|
| August 15, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | List of billings by Mr. Wiand. |
| August 18, 2024 | Greg Melick (paralegal to Law Office of Brent Winters) | Stephen Preziosi | Affidavit of Melick |

I now protest supplying the receiver this information for two reasons: first, the documents fall within the attorney-client privilege as the two law firms (Law Office of Brent Winters and Mr. Melick as paralegal for that office and my office) have a common interest and a common client; second, the receiver, Mr. Wiand, has an intimate relationship with opposing counsel in this case and in the criminal case against Mr. DaCorta. Mr. Wiand was a witness for the U.S. Attorney at Mr. DaCorta's criminal trial and was a witness for the Commodity Futures Trading Commission in their motion for summary judgment against my client.

Mr. Wiand's relationship with opposing counsel make this request improper as I would have to divulge legal strategy, argument, and communications concerning the appeal to the receiver who not only has regular communications with opposing counsel but has also acted as a witness for opposing counsel at Mr. DaCorta's

criminal trial and provided a sworn affidavit for the CFTC in their motion for summary judgement.

In fact, Mr. Wiand, according to his account of billable hours disclosed in filings with the Middle District of Florida, has spent a considerable amount of time consulting with the attorneys for the U.S. Attorney's Office and the attorneys for the Commodity Futures Trading Commission preparing for his testimony against my client. Exhibit D represents a small sample of the billable hours Mr. Wiand has attributed to communicating with the CFTC by phone, email, and preparing his testimony and sworn affidavits against Mr. DaCorta. (Exhibit D – Mr. Wiand's billing for his testimony at Mr. DaCorta's Criminal Trial and billing for providing the CFTC with affidavits in support of their motion for summary judgment).

Supplying Mr. Wiand with privileged documents would be the same as supplying them to opposing counsel. This makes Mr. Wiand's request regarding privileged documents and attorney work product decidedly improper and unfair.

ARGUMENT

*Privileged Documents Are Excluded By The Express Language Of The Subpoena*

Mr. Wiand's subpoena is improper because the privileged documents that were not turned over to him are excluded by the express language in his subpoena. The subpoena specifically states at page 5 paragraph 4 as follows: *Any correspondence, communication, or agreements relating to your retention as counsel*

for Michael DaCorta (*excepting privileged communications between Michael*

*DaCorta and counsel for the purpose of obtaining legal advice*. [emphasis added].

Privileged communications are expressly excluded from production. Communications with a paralegal fall within the attorney client privilege, the work product privilege and the common interest doctrine.

*The Attorney Client Privilege Extends To Paralegals*

The attorney-client privilege extends to paralegals who work for law firms retained by a client. As a paralegal for the Law Office of Brent Winters, the communications with Mr. Melick were privileged. *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002) quoting *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) holding that because the complexities of modern existence prevent attorneys from effectively handling clients affairs without the help of others, the attorney-client privileged must included all the persons who act as the attorney's agents. *See also United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) holding that privileged persons include the lawyer, agents of the lawyer and those that facilitate representation. *See also People v. Osorio*, 75 N.Y.2d 80, 84, 549 N.E.2d 1183, 1185-86 (1989) holding that attorney-client privilege extends to attorney's employees. *United States v. Gumbaytay*, 276 F.R.D. 671, 679 (M.D. Alabama 2011).

Because Mr. Melick is a paralegal and employee of the law office of Brent Winters, the attorney-client privilege extends to any communications with him

concerning the legal representation of a client common to both law firms. All the emails listed above related to the appeal for Mr. Michael DaCorta and the legal arguments that would be raised on appeal. Those communications are therefore privileged and cannot be disclosed.

<u>*The Common Interest Doctrine And Attorney Client Privilege*</u>

Not only are the communications between the two law offices protected by the attorney-client privilege directly, but they are protected by the Common Interest Doctrine, an extension of the attorney-client privilege.

The common interest doctrine "is not a separate privilege but 'an extension of the attorney client privilege. *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). It is "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege." *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008); *In re Photochromic Lens Antitrust Litigation*, 2013 WL12316874 at pg. 2 (M.D. Florida Tampa Div. 2013). "The common interest doctrine precludes a waiver of the underlying privilege concerning confidential communications between the parties 'made in the course of an ongoing common enterprise and intended to further the enterprise,' irrespective of whether an actual litigation is in progress." <u>Id.</u> (quoting *Schwimmer*, 892 F.2d at 243).

In this case, while we are not dealing with two parties, we are dealing with two law firms that have a common client, Mr. Michael DaCorta. Those two firms also have a common interest in the best possible outcome of the case for Mr. DaCorta and to that end shared information in the emails outlined above. The purpose of the communications (emails) between the two law firms was to develop the best possible legal strategies and arguments for our common client. The communications therefore, under the common interest doctrine, fall within the attorney-client privilege.

### *The Receiver Is Not Entitled To The Emails The Undersigned Attorney And Mr. Melick As Those Documents Are Protected By The Work Product Privilege*.

The communications in question (all emails) are between the undersigned counsel and the paralegal, Mr. Greg Melick, for the Law Office of Brent Winters. Again, Mr. DaCorta is also a client of attorney Brent Winters. DaCorta, who is now in custody at a federal prison, directed me to consult with Mr. Melick in the preparation of the appeal, i.e. drafts of the appellate brief were exchanged; legal research was exchanged, documents relevant to the appeal were exchanged and discussed between a paralegal for a firm that represents Mr. DaCorta and the undersigned attorney. This was done at the direction of my client as he is represented by both firms. The contents of those emails is at its very essence attorney work product.

The Supreme Court recognized the right of attorneys to protection of their work product from discovery in *Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947) and *Upjohn Co. v. United States,* 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981). *Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F Supp 49, 50 [SDNY 1988]. In *Hickman,* the Supreme Court recognized that "unwarranted inquiries into the files and the mental impressions of an attorney" by the opposing attorney would provide substantial intrusion into the effective preparation of a client's case. Thus, the Court held that the work product of a lawyer reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" should be protected from disclosure unless the opposing attorney can show need. The Court also said that oral statements made by witnesses to an attorney in the course of his preparations for trial are absolutely privileged from disclosure. *Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F Supp 49, 50 [SDNY 1988].

Divulging the emails to Mr. Wiand, the receiver, would be improper because of his relationship with opposing counsel, i.e. the CFTC. Mr. Wiand appeared at Mr. DaCorta's criminal trial as a witness for the U.S. Attorney, and he provided sworn statements for the Commodity Futures Trading Commission in their motion for summary judgment. He has consistently acted as the agent for opposing counsel

throughout this litigation and providing him with communications containing attorney work product would he highly prejudicial to Mr. DaCorta.

_The Work Product Doctrine Applies To All Communications Between The Two Law Firms_.

In _Bank Brussels Lambert v Credit Lyonnais (Suisse) S.A._, 160 FRD 437 [SDNY 1995], this Court explained the distinction between the attorney-client privilege and the attorney work product doctrine: "Notwithstanding waiver of the attorney-client privilege, a letter and a Memorandum might still be protected from discovery by the work product doctrine because waiver principles applicable to the attorney-client privilege are not identical to those that apply to work product. Generally, disclosure to any third-party will constitute waiver of the attorney-client privilege. _See_ 8 Charles A. Wright et al., _Federal Practice & Procedure_ § 2016.2, at 238 (1994) ("waiver due to an interaction with one person ordinarily deprives the privilege-holder of the right to assert the privilege against anyone else"). By contrast, because the purpose of the work product doctrine is to prevent an adversary from taking advantage of an attorneys' preparation for litigation, waiver only occurs where disclosure to a third-party substantially increases the likelihood that the work product will fall into the hands of the adversary." _Bank Brussels Lambert v Credit Lyonnais (Suisse) S.A._, 160 FRD 437, 448 [SDNY 1995].

To qualify as attorney work product, documents must be prepared in anticipation of litigation. See generally *U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) and FRCP Rule 26(b)(3)(A) and (B) ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation. The emails in this case occurred in preparation for the appeal. Legal arguments and the phrasing of legal arguments were discussed, modified, and included were the opinions and statements attributed to my client. Discussion of the testimony of witnesses and how they affect the legal issues to be raised on appeal are attorney work product.

There is no question that the work-product doctrine is applicable in this case to the email exchanges with Mr. Melick. It would be especially harmful to Mr. DaCorta to divulge this information to Mr. Wiand, the alter-ego of the Commodity Futures Trading Commission.

*The Subpoena Is Overly Broad, And The Receiver Has Not Shown The Relevance Of The Documents He Seeks And The Requests Are Beyond The Scope Of His Authority As Receiver*.

The receiver's subpoena contains a list of requests at page 5 of the document. (See Exhibit B pg. 5). That list contains five distinct paragraphs. The first four paragraphs request documents relating to my retention as appellate attorney for Mr. DaCorta. Paragraph five requests "any and all" communications with several people and organizations, including communications with a law firm that represents Mr. DaCorta. The "any and all" language regarding communications with another law

firm is overly broad, inappropriate, and Mr. Wiand has not shown the relevance for his request of these documents.

<u>*The Receiver's Requests Are Beyond The Scope of His Authority As Receiver*</u>

The requests made by the receiver in paragraph five of the subpoena at page five are beyond the scope of authority of the receiver. The requests relate indirectly to the receiver's theory that the lenders/investors are now, in 2024, spending money on legal fees at the request of Mr. Brent Winters and an organization known as the replevin group. The receiver's activities in this area are beyond the scope of his authority as receiver and his requests must be denied.

The Middle District of Florida has already held once before that Mr. Wiand's authority as receiver is limited to the powers and rights of the receivership entities. *Commodity Futures Trading Commn. v Oasis Intl. Group Ltd.*, 8:19-CV-886-T-33SPF, 2020 WL 8617558, at *4 [MD Fla Sept. 14, 2020], <u>report and recommendation adopted,</u> 8:19-CV-886-T-33SPF, 2020 WL 8617559 [MD Fla Oct. 19, 2020] holding that the Court's Order provides the Receiver with the powers, authorities, rights, and privileges previously possessed by the Receivership Entities.

The authority of the receiver is therefore limited to the investigation of Receivership assets and Receivership property. Under Mr. Wiand's theory that the

law firm of Brent Winters and the Replevin Group are somehow influencing the lenders and investors and convincing them to spend money on legal fees in 2024. The relevant time period in the litigation is 2014 to 2019. The business known as OIG is closed and Mr. DaCorta is in prison.

Mr. Wiand is attempting to investigate how the lenders/investors are spending their own money now in 2024. Whatever monies the lenders and investors are spending, those fees or any money that the lenders/investors are spending in 2024 are not part of the Receivership assets and are not Receivership property. In fact, Mr. Wiand does not allege that any of the assets allegedly spent on legal fees are part of Receivership assets or Receivership property derived from activities of the now defunct Receivership Entities.

The Receivership Entities, and the receiver standing in the shoes of those Entities, therefore have no rights to investigate or control how the lenders/investors are now spending their money. Mr. Wiand should be foreclosed from investigating how or why Mr. Winters, the Replevin Group, and the investors and lenders are interacting as it is beyond the scope of his authority as receiver.

Because the Receiver has appeared as a witness for the United States Attorney against my client, Mr. Michael DaCorta, at Mr. DaCorta's criminal trial, and because Mr. Wiand has also appeared as a witness for the  Commodity Futures Trading Commission in the civil case against my client, he should not be privy to the content

of the emails exchanged with non-parties to the case. Additionally, Mr. Wiand's

subpoenas are not based on any facts within the case but are based on his theory that

lenders are funding the litigation for Mr. DaCorta. Mr. Wiand has not provided any

proof that the monies funding the appellate litigation for Mr. DaCorta are in any way

related to the monies associated with the litigation in the Middle District of Florida

in the case of CFTC v. Oasis International Group (Civil Action No. 19-CV-886).

*Conclusion*

The subpoena served on me by Mr. Wiand must be modified to exclude any

communications concerning the preparation of the appeal for Mr. DaCorta. All

such communications are privileged as they contain legal research, legal analysis,

discussion of legal argument and drafts of the appellate brief to the 11th Circuit

Court of Appeals.

Dated: December 10, 2024
New York, New York

Stephen N. Preziosi, Esq.
Attorney for Michael DaCorta
48 Wall Street, 11th Floor
New York, New Yor 10005
212-960-8267