UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In RE SUBPOENA BY A RECEIVER IN
COMMODITY FUTURES TRADING
COMMISSION,

                            Plaintiff,

            -against-

OASIS INTERNATIONAL GROUP, LIMIT ET
AL.,

                            Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/2026
```

24 Misc. 577 (AT)

**ORDER**

ANALISA TORRES, District Judge:

In this action, Stephen N. Preziosi, an appellate attorney representing Michael DaCorta in a pending appeal of a civil action in the United States Court of Appeals for the Eleventh Circuit, *Commodity Futures Trading Comm'n v. Oasis Int'l Grp., et al.*, No. 24-10132 (11th Cir. appeal filed Jan. 5, 2024), seeks an order modifying a subpoena issued by the United States District Court for the Middle District of Florida in the underlying civil action for which Preziosi is handling DaCorta's appeal. *See* Mot., ECF No. 1; Subpoena, ECF No 1-2; Summ. J. Order, ECF No. 780, *Commodity Futures Trading Comm'n v. Oasis Int'l Grp., Ltd.*, No. 8:19 Civ. 886 (M.D. Fla. Dec. 6, 2023) (the "civil action"). The subpoena was issued by Burton W. Wiand, the court-appointed Receiver in the civil action. Subpoena at 1. The Receiver cross-moves for indirect civil contempt on the basis of Preziosi's noncompliance with the subpoena. *See* Contempt Mot., ECF No. 7.

## BACKGROUND

In 2019, the Commodity Futures Trading Commission (the "CFTC") brought a civil action in the United States District Court for the Middle District of Florida against Michael DaCorta and various other individuals and entities claiming violations of the Commodity

Exchange Act and CFTC regulations.  Mot. at 2.  The complaint alleged that from April 2014 to April 2019, DaCorta and his co-defendants fraudulently solicited investments in two foreign currency commodity pools, raising approximately $75 million from over 700 U.S. residents.  *See* Resp., ECF No. 5, at 2.  Around the same time, the federal government initiated criminal proceedings against DaCorta and others.  *Id.* at 4.  In 2022, a jury found DaCorta guilty on three counts: conspiracy to commit wire and mail fraud, engagement in an illegal monetary transaction, and filing a false income tax return; he was sentenced to 23 years' imprisonment and order to pay over $53 million in restitution.  Resp. at 4; Mot. at 3.

Wiand was appointed as a Receiver in the civil action and was authorized to "marshall[] and preserv[e]" assets related to the civil action.  Order Appointing Receiver, ECF No. 1-1, at 2; *see* Mot. at 3; Resp. at 3.  The Receiver alleges that, shortly after DaCorta's criminal indictment was issued, Greg Melick, a non-party to the civil action "began soliciting Ponzi Scheme investor victims to raise money" for DaCorta's legal representation and hired an Illinois attorney, Brent Winters, with that money.  Resp. at 4.  The Receiver claims that, prior to the actions relevant to this motion, Melick worked "in the business of distributing movies."  *Id.* at 5.  The Receiver also alleges that Melick engaged in a "persistent smear campaign against the Receiver," using false claims concerning available assets in an attempt to encourage potential investors to fund DaCorta's legal representation, and that, with Melick's assistance, DaCorta retained Preziosi for his Eleventh Circuit appeal after the Middle District of Florida granted summary judgment to the CFTC in the civil action.  *Id.* at 5–6.  The Receiver's papers suggest that Preziosi's representation of DaCorta in the civil appeal results from "[p]ersistently exploiting the same investor victims to benefit the convicted felon that victimized them in the first place."  *Id.* at 6.

On June 10, 2024, about the time that Preziosi perfected DaCorta's appeal in the Eleventh Circuit (which remains pending), the Receiver served the instant subpoena on Preziosi. *See* Subpoena; Mot. at 4; Resp. at 8. That subpoena made various requests, generally focusing on documents or correspondence related to the funds used to pay for Preziosi's representation of DaCorta. *See* Subpoena at 8; Mot. at 4–5. Preziosi responded by producing all documents sought in paragraphs 1–4 of the subpoena or denying that such documents existed.[1] *See* Mot. at 5; Resp. at 8.

At issue in this proceeding is paragraph 5 of the subpoena, which sought "[a]ny and all communications with Brent Winters, Greg Melick, Jason McKee, Intermountain Precious Metals, any person affiliated with the Oasis Replevin Group (a/k/a 'Oasis Helpers'), and/or Michelle Utter." Subpoena at 8. With respect to paragraph 5, Preziosi states that he informed the Receiver that he had one phone conversation each with Brent Winters and Jason McKee, that he had no documents reflecting these conversations, and that he had no communications with any other individual listed in the paragraph except for Greg Melick. Mot. at 6. Preziosi claims, however, that Melick was "a paralegal at another law firm that also represents" DaCorta, and that Preziosi had exchanged "a number of emails" with Melick "regarding legal research, legal argument for the appellate brief, legal analysis of facts, case law for the brief," and "statutory and regulatory law." Mot. at 5–6. Preziosi refused to produce these emails on the ground that they are protected as attorney work product. *See id.* at 6–7; Resp. at 8.

On July 31, 2024, counsel for the Receiver requested that Preziosi produce a privilege log of withheld documents. Resp. at 8. According to the Receiver, Preziosi refused to do so, and

---

[1] Although Wiand characterizes Preziosi's response to the balance of the subpoena as "sparse," he does not claim that Preziosi failed to comply with any request made in paragraphs 1 through 4 of the subpoena. *See* Resp. at 8; *see generally* Contempt Mot.

informed the Receiver that he would file an objection to the subpoena in the civil action. *Id*. Claiming that Preziosi had consistently refused to comply with the subpoena, on August 16, 2024, the Receiver filed a motion for contempt in the Middle District of Florida. *See* Resp. at 8. On December 3, 2024, the Florida district court dismissed the motion after determining that it did not have jurisdiction under Federal Rule of Civil Procedure 45. Resp. at 9; Mot. at 11; Order, ECF No. 1-3. Preziosi filed this motion shortly afterwards, on December 10, 2024. *See generally* Mot. After supporting memoranda were submitted related to Preziosi's motion, the Receiver also filed a motion for indirect civil contempt against Preziosi, *see* Contempt Mot.[2] On December 12, 2024, the Court ordered Preziosi to submit the emails at issue to the Court for *in camera* review, and Preziosi complied with that order. *See* ECF No. 2.

## LEGAL STANDARD

I.    Privilege

Under the Federal Rules of Civil Procedure, a court where compliance is required for a duly issued subpoena "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Federal Rule of Civil Procedure 26(b)(3) defines one such privilege, protecting "documents and tangible things that are prepared in anticipation of litigation or for trial"— known as the attorney work-product privilege. *See United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir. 1998). The attorney work-product privilege "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Id.* at 1196. If a document is subject to the privilege, then that document is only discoverable where the party

---

[2] The Receiver also seeks, "in the alternative," an order compelling production of documents subject to paragraph 5 of the subpoena, as well as an award of attorney's fees and costs. Contempt Mot. at 9–10.

seeking discovery shows that the privilege has been waived or that an exception applies. Fed. R. Civ. P. 26(b)(3)(A)(iii); *see Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 70–71 (S.D.N.Y. 2003) (discussing waiver of the work-product privilege).

Courts construe the attorney work-product privilege to cover a broad range of documents which are prepared in anticipation of litigation. The Second Circuit has held that Rule 26(b)(3) does not only protect materials which are made "primarily" or "exclusively" to aid in litigation but extends its coverage to documents which, for example, analyze potential litigation outcomes, even if the documents' primary purpose is to assist business decisions. *Adlman*, 134 F.3d at 1198, 1199. Courts have also held that the attorney work-product privilege covers documents prepared at the request of an attorney, even when they are not prepared by the attorney herself. *See, e.g.*, *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 522–24 (S.D.N.Y. 2001) (protecting documents prepared by financial advisory firms at the request of attorneys from disclosure).

II.     Contempt

To establish contempt, the Receiver must "establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

**DISCUSSION**

As a preliminary matter, the Receiver argues that the Court must deny Preziosi's motion to modify the subpoena as untimely, because he filed it well after the return date of the subpoena, failed to produce a privilege log at the time he responded to the subpoena, and has not shown good cause for either alleged deficiency. *See* Resp. at 10–11. Although the text of Federal Rule

5

of Civil Procedure 45 states that "[q]uashing or [m]odifying a subpoena" is "[r]equired . . . on timely motion," *see* Fed. R. Civ. P. 45(d)(3)(A), courts in this circuit have routinely considered motions to quash that were not timely filed. *See, e.g.*, *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 516–17 (S.D.N.Y. 2022) (citing *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) (considering an untimely motion under the Court's "broad discretion" because "good cause exist[ed] to overlook [the] delay in filing it"), *aff'd* 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) (finding that because no prejudice would result from the delay, "failure of [the] movant to comply with the literal requirements of Rule 45(b) does not provide grounds for a reversal of the judgment below"); *Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 Civ. 5056, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering an untimely motion to quash where the "subpoenas contain[ed] non-specific, overbroad production requests").

Preziosi filed this motion well after the return date of the original subpoena—which was June 14, 2024—but the Court declines to deny his motion as untimely. Preziosi responded to the subpoena on July 11, 2024, asserted the privilege that is now at issue, and otherwise responded to all requests made in the subpoena. The Receiver then filed a motion for contempt before the Middle District of Florida in August 2024, *see* Resp. at 8–9; Motion for Contempt, ECF No. 834, No. 8:19 Civ. 889 (M.D. Fla. Aug. 16, 2024), and Preziosi filed the instant motion shortly after the Florida district court concluded that this issue should be adjudicated before this Court. *See* ECF No. 1-3.

Although Preziosi could have brought this motion before this Court more promptly, nothing in the record suggests that the delayed filing is due to bad faith or dilatory tactics.

6

Preziosi communicated his intention to object to the subpoena shortly after the subpoena's original return date, and the Receiver does not argue that that delay (from June 14 to July 11, 2024) reflects a lack of diligence.  Nor does the Receiver argue that the untimely filing has caused it undue prejudice; the Receiver does not argue that delayed adjudication of its subpoena has interfered with his duties in any way other than preventing him from viewing the subject documents.  As a result, the Court will, in its discretion, consider the motion to modify on the merits.  *See, e.g.*, *Langford*, 513 F.2d at 1126.

    I.        <u>Motion to Modify the Subpoena</u>

Preziosi asks this court to modify the subpoena to exclude the emails exchanged between him and Melick.  *See* Mot. at 1–2.  Preziosi argues that the documents subject to paragraph 5 of the subpoena—a set of emails exchanged between him and Greg Melick—are covered by the attorney-client privilege, and as such, the subpoena should be modified to prohibit their disclosure.  *See* Mot. at 12.  He argues that Melick acted as a paralegal while composing his emails and that the substance of all emails concerns "legal research, legal arguments, and legal strategy."  *Id.*

Preziosi represents that all of the emails concern the scope of his appellate representation of DaCorta.  *Id.* at 1–2; *see also id.* at 19–26.  Preziosi produced the emails for the Court's *in camera* review via email on January 2, 2025, and the Court agrees with his characterization.  The emails include selected record material from the underlying civil action, and Melick comments on some of that material, all of which would have been relevant to Preziosi's appellate strategy. They were clearly prepared "in anticipation of" Preziosi's pending appeal.  *See Adlman*, 134 F.3d at 1197–98.  The fact that Melick—and not Preziosi—composed the emails is immaterial to the question of whether they were ultimately produced "in anticipation of," and with the express

goal of aiding, Preziosi's appellate litigation strategy.  *See Strougo*, 199 F.R.D. at 522–24.

None of the Receiver's arguments provide a basis to find that the work-product privilege does not apply or was waived.  The Receiver claims that the emails are not privileged because Melick was "not a paralegal" and instead was simply using the title to "conceal his years of fraudulent conduct," citing other instances of allegedly fraudulent conduct intended to manipulate investors.  Resp. at 11.  But Melick's allegedly fraudulent conduct has no bearing on whether the particular emails at issue here were prepared in anticipation of litigation, and thus come within the scope of the work-product privilege.[3]  And, regardless of whether Melick is properly considered a "paralegal" or is in fact supervised by a licensed attorney, *see* Resp. at 12, Melick's emails were expressly prepared for an attorney and concern that attorney's legal strategy.  As a result, those emails are covered by the work-product privilege.

The Receiver argues that a crime-fraud exception applies to the work-product privilege in this case, citing to *Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 1 A.D.3d 223 (N.Y. App. Div. 2003).  Resp. at 12.  Under that exception, New York state courts have refused to apply privilege where privileged communications "may have been in furtherance of a fraudulent scheme."  *Ulico Casualty Co.*, 1 A.D.3d at 223.  Although the Receiver raises allegations that Preziosi's representation of DaCorta was funded with illegitimately obtained funds, the Court holds that after *in camera* review, the emails themselves have no bearing on the allegedly fraudulent conduct.  *See* Resp. at 13–14 (acknowledging that *in camera* review would be appropriate); *cf., e.g., Surgical Design Corp. v. Correa*, 284 A.D.2d 528, 528 (N.Y. App. Div. 2001) (finding that an attorney-client communication was not privileged because that

---

[3] Of course, emails which concerned schemes to defraud investors, or emails which concerned the details of Mr. Preziosi's funding or retention, may very well not fall within the scope of the work-product privilege.  But the Court's *in camera* review has determined that the emails subject to dispute in this action do, in fact, contain legal analysis and work product relevant to Preziosi's appeal strategy.

communication "advis[ed]" the client that "its export practices were fraudulent under Brazilian law").

II.    Motion for Indirect Civil Contempt

Because the subpoena must be modified to exclude the emails between Preziosi and Melick, the Court denies the Receiver's motion for indirect civil contempt. Under Federal Rule of Civil Procedure 45(e), the Court may find contempt in this matter where it finds "[f]ailure by any person without adequate excuse to obey a subpoena." The Court holds that Preziosi had an "adequate excuse" to refuse full compliance in this case—namely, that the subpoena sought privileged materials and should be modified to exempt those materials from its scope.

The only arguable basis for a finding of contempt, therefore, is Preziosi's untimely filing of the motion before this Court, or his alleged failure to produce an adequate privilege log. For the reasons discussed above, the Court also declines to find that Preziosi's untimely filing to modify or quash the subpoena constitutes noncompliance sufficient to justify an award of attorney's fees and costs. *See also Brentlor, Ltd. v. Schoenbach*, No. 13 Civ. 6697, 2018 WL 5619951, at *3 (S.D.N.Y. Jan. 9, 2018) ("[B]efore contempt sanctions are imposed on a non-party, the violation of a court order is also generally required." (quotation marks omitted)).

However, the Court finds that the privilege log, as produced at pages 19 through 26 of Preziosi's motion, is insufficient. *See* Mot. at 19–26. The privilege log does not include the email addresses of the senders or recipients of any email, and certain emails appear to include recipients beyond solely Preziosi. Accordingly, Preziosi shall produce a privilege log to the Receiver which identifies each email withheld from production, includes the email addresses of the senders and recipients of every email (including recipients included as a "cc"), and states the date and time that each email was sent. *See* Local Civ. R. 26.2(a)(2)(A).

9

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Preziosi's motion to modify the subpoena. The subpoena is MODIFIED to exclude the emails exchanged between Preziosi and Melick that Preziosi has identified in his motion at ECF No. 1 and which Preziosi has provided to the Court. The Receiver's motion for indirect civil contempt is DENIED. By **January 23, 2026**, Preziosi shall produce a privilege log consistent with this order to the Receiver, and file a letter on the docket certifying his compliance with this Order.

This order is without prejudice to the Receiver's ability to file a motion to further modify the subpoena and compel the production of specific emails, if Preziosi's privilege log provides grounds for the Court to revisit its decision. Any such motion shall be filed within 30 days of receipt of Preziosi's privilege log.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 1 and 7.

SO ORDERED.

Dated: January 9, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

10